UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
BRIANA PACHECO AND HELEN HIOTIS,　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiffs,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND**
　　　　　　　　　　　　　　　　　　　　:　　**ORDER**
　　　-against-　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
1454 DINER, INC., MIKE MOUDATSOS　　:
ELIAS MOUDATSOS, JOSE LUIS　　　　　:　　25-CV-4665 (PKC) (CHK)
ROSENDO, FLORES MARIANO JIMENEZ　 :
PORTILLA, FERNANDO MAGDALENO-　　 :
TZUNUN-MORALES; DARIO CHAVEZ,　　 :
AND MARK STUMER　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　Defendants.　　　　　　　　:
---------------------------------------------------------------x

**CLAY H. KAMINSKY, United States Magistrate Judge:**

Plaintiffs Briana Pacheco and Helen Hiotis move to disqualify Mark Stumer and his firm, Mark B. Stumer & Associates, PC, from representing Defendants[1] in this matter. For the reasons set forth below, that motion is denied with leave to renew.

**I.　Background**

On August 21, 2025, Plaintiffs filed a complaint against their former employer 1454 Diner, Inc. (d/b/a Mike's Diner of Brooklyn) (the "Diner"), its owners, several employees, and Mark Stumer, the Diner's legal counsel. *See* ECF No. 1. Plaintiffs allege that they were subjected to sexual harassment and retaliation in

---

[1] Although Mr. Stumer himself is also defendant in this action, for the purposes of this motion, "Defendants" refers to all defendants excluding Stumer.

violation of Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, and New York City Human Rights Law.

Plaintiffs allege that they were subject to sexual harassment from several of the Diner's employees and one part-owner while working at Mike's Diner. First Amended Complaint ("FAC"), ECF No. 24, ¶ 4. Although Plaintiffs reported the harassment to their supervisors, Defendants took no action on these complaints. FAC ¶¶ 80, 99–100, 109–11, 114–17.

After their initial complaints went unaddressed, Plaintiffs formally complained of Defendants' behavior by hiring counsel and sending a demand letter to the Diner in October 2024. FAC ¶ 131. But several days after counsel mailed the demand letter, the Diner terminated Ms. Pacheco's employment. FAC ¶¶ 131–32. Mr. Mike Moudatsos claimed that Ms. Pacheco was terminated due to a lack of business—but Plaintiffs note that the Diner advertised an open server position just one week prior to Ms. Pacheco's termination. FAC ¶ 133.

In January and February 2025, Plaintiffs each filed a complaint with the EEOC regarding the sexual harassment they experienced. FAC ¶¶ 134–35. Shortly after Ms. Hiotis filed her EEOC complaint, the Diner "failed to pay Ms. Hiotis the proper amount for her work as a counter worker, cut her hours, and added an additional server to Ms. Hiotis' shifts." FAC ¶ 136. In April 2025, Mr. Elias Moudatsos tried to speak with Ms. Hiotis about her concerns. FAC ¶ 137. Mr. Elias Moudatsos offered Ms. Hiotis $5,000 to cover her lost earnings and agreed to schedule her as normal moving forward in exchange for her withdrawal of the

2

EEOC complaint. FAC ¶ 138. A few days later, Mr. Elias Moudatsos provided Ms. Hiotis with a draft affidavit prepared by Mr. Stumer, informing her that she needed to sign the affidavit to receive the $5,000. FAC ¶ 138. According to Plaintiffs, the affidavit falsely stated that Ms. Hiotis lied about the sexual harassment allegations, the conduct was consensual, and Ms. Hiotis convinced Ms. Pacheco to file a false claim with the EEOC. FAC ¶ 138. Ms Hiotis refused to sign the affidavit. FAC ¶ 138.

Later, Ms. Hiotis had a call with Mr. Elias Moudatsos and Mr. Stumer. FAC ¶ 139. During the call, Ms. Hiotis again refused to sign the affidavit and withdraw her EEOC complaint. FAC ¶ 139. In response, Plaintiffs allege that Mr. Stumer, speaking to Mr. Elais Moudatsos, stated "okay, so we'll need to fire her, Lee . . . She's still suing you." FAC ¶ 139. Mr. Stumer ended the call shortly after. FAC ¶ 139.

In July 2025, Ms. Hiotis was fired from her position at the Diner. FAC ¶ 140. Plaintiffs claim that Ms. Hiotis was terminated in retaliation for her complaints of sexual harassment and discrimination, and allege that Mr. Mike Moudatsos stated she was terminated "because she complained and was a troublemaker." FAC ¶ 140. In an email to Plaintiffs' counsel sent after Plaintiffs filed suit, Mr. Stumer explained that he "advised [his] client to fire your client based on her admitting to him that she filed a false claim with the EEOC and for terrible job performance." ECF No. 40-3.

Plaintiffs filed their complaint on August 21, 2025 and an amended complaint on September 3, 2025. See ECF Nos. 1, 24. On October 3, 2025, Mr. Stumer filed a motion for a premotion conference regarding a motion to dismiss he intends to file regarding only the claims asserted against him. See ECF No. 37. All other Defendants filed an answer to the complaint on September 26, 2025. See ECF No. 35.

Now, Plaintiffs move to disqualify Mr. Stumer from representing Defendants in this action. Plaintiffs argue that Mr. Stumer's representation of Defendants violates the witness-advocate rule, set forth at Rule 3.7 of the New York Rules of Professional Conduct (the "RPC"), and creates a non-waivable conflict of interest in violation of Rule 1.7 of the RPC.

## II. Legal Standard

Disqualification of counsel is "committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990) The authority to disqualify derives from the Court's "inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

Courts evaluate motions to disqualify opposing counsel with "fairly strict scrutiny," particularly when they are premised on the witness-advocate rule, to "guard against tactical use" of such motions. *Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir. 1989); *see First Trust Nat'l Assoc. v. Moses & Singer*, No. 99-CV-1947, 2000

4

WL 1093054, at *6 (S.D.N.Y. Aug. 4, 2000) ("Motions to disqualify opposing counsel are viewed with disfavor because they impinge on a party's right to employ the counsel of its choice."). Accordingly, "the party seeking disqualification must meet a heavy burden of proof in order to prevail." *Gormin v. Hubregsen*, No. 08-CV-7674, 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009) (quotations omitted). In determining whether to disqualify counsel, courts look to the American Bar Association and state disciplinary rules for guidance, although not every violation of a disciplinary rule requires disqualification. *Finkel v. Frattarelli Bros.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010).

### III. Discussion

#### A. Standing to Bring a Motion to Disqualify

As a preliminary matter, Plaintiffs have standing to bring this motion. Defendants argue that Plaintiffs lack standing to disqualify Mr. Stumer because Plaintiffs lack an attorney-client relationship. Def's Opp., ECF No. 43, at 2–3. However, this argument lacks merit with respect to disqualification under both the witness-advocate rule and on conflict-of-interest grounds.

To support their argument that Plaintiffs lack standing, Defendants cite to *United States v. Cunningham*, which states: "(a)s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." 672 F. 2d 1064, 1072 (2d Cir. 1982). But *Cunningham* addressed only counsel's *prior* representation that presented a conflict of interest and did not address a conflict of interest presented by concurrent representation.

5

Additionally, in *Cunningham*, the Court further explained the motivations behind that rule: "The refusal to disqualify in the absence of a motion by the former client is all the more appropriate in the context of a criminal prosecution with its implication of constitutional rights." *Id.* Defendants' reliance on *Satina v. New York City Human Resources Administration* is similarly misplaced, as that case also addressed disqualification solely in the context of successive representation. *See Satina v. New York City Hum. Res. Admin.*, No. 14-CV-3152, 2015 WL 6681203, at *1–2 (S.D.N.Y. Nov. 2, 2015).

Further, courts in this Circuit have concluded that parties have standing to seek disqualification of opposing counsel on conflict of interest grounds. *See Billewicz v. Town of Fair Haven, Vermont*, No. 22-CV-73, 2022 WL 4115966, at *2 (D. Vt. Aug. 11, 2022) (collecting cases); *Nolan v. City of New York*, 754 F. Supp. 3d 548, 552 (S.D.N.Y. 2024); *Miller v. Apple, Inc.*, No. 25-CV-1172, 2025 WL 1031283, at *2 (S.D.N.Y. Apr. 7, 2025). And although it appears that the Second Circuit has not explicitly held that opposing counsel has standing to raise a motion to disqualify under the witness-advocate rule, it has assumed as much: motions brought under the witness-advocate rule seem to be made exclusively by opposing counsel. *See, e.g., Murray v. Met. Life Ins. Co.*, 583 F.3d 173, 177–81 (2d Cir. 2009); *Hempstead*, 409 F.3d at 129–30. Opposing parties have standing to bring such motions because they may suffer prejudice if an attorney serves as both a witness and an advocate. *See Murray*, 583 F.3d at 178 (describing the harms posed by allowing counsel to serve as both an advocate and a witness); *MacArthur v. Bank of N.Y.*, 524 F. Supp.

6

1205, 1208 (S.D.N.Y. 1981). Courts outside the Second Circuit have likewise found standing to seek disqualification of opposing counsel under the witness-advocate rule. *See, e.g.*, *Ambush v. Engelberg*, 282 F. Supp. 3d 58, 65 (D.D.C. 2017) (finding that the plaintiff had standing to seek disqualification based on the District of Columbia's witness-advocate rule); *Wakefield v. Advanced Med. Servs. Corp.*, No. 10-CV-143, 2010 WL 11628521, at *5 (D. Ariz. Sept. 7, 2010) (finding standing because opposing counsel's "simultaneous service as counsel and witness in the case . . . . would cause imminent injury to Defendants"); *Colyer v. Smith*, 50 F. Supp. 2d 966, 974 (C.D. Cal. 1999) (finding standing to seek disqualification of opposing counsel because it "directly affect[ed] [plaintiff's] access to evidence and the orderly conduct of the trial"). This Court reaches the same conclusion.[2]

### B.   Disqualification Under the Witness-Advocate Rule

Plaintiffs argue that Mr. Stumer and his firm must be disqualified under the witness-advocate rule because of his role in advising Defendants to fire Ms. Hiotis. Pl's Mot. at 2. Specifically, Plaintiffs claim that Mr. Stumer's testimony is critical on (1) the call with Ms. Hiotis, Mr. Elias Moudatsos, and himself; (2) the affidavit Mr. Stumer prepared for Ms. Hiotis; and (3) the factual basis for Ms. Hiotis' termination. Pl's Mot. at 2.

---

[2] Even if Plaintiffs' standing to bring this motion were in doubt, the Court may address the issue of disqualification through the Court's "inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video*, 409 F.3d at 132 (quoting *Nyquist*, 590 F.2d at 1246); *see Blake v. Race*, No. 01-CV-6954, 2005 WL 8181513, at *8 (E.D.N.Y. Jan. 12, 2005) (raising the issue of disqualification *sua sponte*).

7

Under Rule 3.7 of the New York Rules of Professional Conduct, with limited exceptions, lawyers "shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact," known as the witness-advocate rule. N.Y. Rules Prof'l Conduct R. 3.7(a). In *Murray*, the Second Circuit identified several motivations underlying this rule: "(1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused." *Murray*, 583 F.3d at 178; *see Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282–83 (2d Cir. 2004). Additionally, "[a] jury may view an attorney as possessing special knowledge of a case and therefore accord a testifying attorney's arguments undue weight." *MacArthur*, 524 F. Supp. at 1208.

To succeed on a motion to disqualify counsel under this rule, the moving party must first demonstrate the necessity of the testimony. *Finkel*, 740 F. Supp. 2d at 373. In evaluating necessity, courts consider "the significance of the matters, the weight of the testimony, and the availability of other evidence." *Id.* (quoting *Kubin v. Miller*, 801 F. Supp. 1101, 1113 (S.D.N.Y.1992)). "The existence of additional witnesses with the ability to testify to the same facts is often fatal to a claim for disqualification under the lawyer as witness rule." *Rothman v. Complete Packaging*

8

*& Shipping Supplies, Inc.*, No. 22-CV-2821, 2023 WL 2740862, at *2 (E.D.N.Y. Mar. 31, 2023).

Second, "to the extent that the attorney would not be providing testimony on his client's behalf, the party seeking to disqualify the attorney must show that there is a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client." *Finkel*, 740 F. Supp. 2d at 373. To demonstrate prejudice, the moving party must show that the testimony of the opposing party's attorney will be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Murray*, 583 F.3d at (quoting *Lamborn*, 873 F.2d at 531). The moving party "bears the burden of demonstrating how and as to what issues in the case prejudice may occur and that the likelihood of prejudice occurring is substantial." *Id.*

Generally, courts have limited disqualification to circumstances where counsel "actually serves as an advocate before the jury." *Finkel*, 740 F. Supp. 2d at 373; *Murray*, 583 F.3d at 179. Nevertheless, disqualification may occur whenever it becomes "apparent the appearing attorney would be a crucial trial witness." *NAVCAN.DC, Inc. v. Rinde*, No. 23-CV-2267, 2024 WL 4635334, at *2 (S.D.N.Y. Oct. 30, 2024).

### 1. Mr. Stumer is not disqualified from representing himself.

As an initial matter, Mr. Stumer cannot be disqualified from representing himself in this matter. Pursuant to 28 U.S.C. § 1654, litigants, including licensed

9

attorneys, may represent themselves in a case pending before federal courts. Accordingly, several courts have held that the witness-advocate rule does not prohibit attorneys from representing themselves. *See NAVCAN.DC, Inc.*, 2024 WL 4635334, at *2 (S.D.N.Y. Oct. 30, 2024) (noting that New York courts have also found that the attorney-witness rule does not "generally control when the attorney is also a litigant" (*quoting Walker & Bailey v. We Try Harder, Inc.*, 123 A.D.2d 256, 257 (1st Dept. 1986))); *Wolk v. Cohen*, No. 94-CV-5096, 1997 WL 197303, at *2 (E.D. Pa. Apr. 21, 1997) ("This court has held that [the witness-advocate rule] is inapplicable to attorneys representing themselves pro se."). Plaintiffs' motion is therefore denied as to Mr. Stumer's representation of himself in this matter.

### 2. Plaintiff's motion is premature as to the remaining Defendants.

With respect to the remaining defendants, Plaintiffs' motion is premature. Courts routinely deny motions to disqualify counsel as premature where there has been no discovery, a pending dispositive motion may resolve the party's concerns, and "it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial." *See Ross v. Blitzer*, No. 09-CV-8666, 2009 WL 4907062, at *3 (E.D.N.Y. Dec. 21, 2009); *Prout v. Vladeck*, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018); *Gormin v. Hubregsen*, No. 08-CV-7674, 2009 WL 508269, at *3 (S.D.N.Y. Feb. 27, 2009) (collecting cases). At this stage, Plaintiffs have not met their burden of establishing that Mr. Stumer's testimony is necessary or prejudicial.

First, Plaintiffs have not established at this stage that Mr. Stumer's testimony is necessary. Although Plaintiffs argue that Mr. Stumer's testimony is

10

necessary because his "subjective intent [is] squarely at issue," Pl's Reply at 2, Mr. Stumer's anticipated motion to dismiss may eliminate the necessity of testimony about his intent. If the motion is granted, there may no longer be a need to probe Mr. Stumer's intent during the call with Ms. Hiotis and Mr. Elias Moudatsos. Any remaining relevant testimony about the call could be provided by Ms. Hiotis and Mr. Elias Moudatsos. *See O'Rear v. Diaz*, No. 24-CV-1669, 2024 WL 3983363, at *12 (S.D.N.Y. Aug. 29, 2024) (rejecting argument that counsel's testimony concerning a phone call was necessary where there was another participant to that call and most of the call was recorded).[3] Testimony about the motivations for firing Ms. Hiotis can also be provided by other witnesses like Mr. Elias Moudatsos.

Second, to the extent Plaintiffs assert that Mr. Stumer's testimony is necessary to Plaintiff's case, it is too early to assess whether Mr. Stumer's testimony would be prejudicial to Mr. Stumer's clients, the Defendants. Plaintiffs have shown "no reason to believe that counsel's testimony would be inconsistent with their clients' account of the facts." *Finkel*, 740 F. Supp. 2d at 377; *Acker v. Wilger*, No. 12-CV-3620, 2013 WL 1285435, at *3 (S.D.N.Y. Mar. 29, 2013) (same); *see Mahn v. Allegis Grp., Inc.*, No. 24-CV-8326, 2025 WL 1380993 (S.D.N.Y. May 12, 2025) (denying motion to disqualify where Plaintiff only speculated that Defendants may have a malpractice claim). Instead, Plaintiffs merely assert that Mr. Stumer's testimony *may* conflict with Defendants' own recollection of events and that Mr. Stumer's defense "*may* require shifting blame to his clients." Pl's Mot. at 3

---

[3] Discovery will reveal whether the call in this case was recorded. The specificity with which it is quoted in Plaintiffs' motion, which included an "uh," suggests it was. *See* Pl's Mot. at 2.

11

(emphasis added). This is not sufficient evidence to meet the high burden placed on a party seeking to disqualify opposing counsel. *See O'Rear*, 2024 WL 3983363, at *12 (denying motion to disqualify as premature where it was not yet clear whether the defendants would raise an affirmative defense based on reasonable care or whether counsel would be an important fact witness to that defense). Further, Plaintiffs' claims that Mr. Stumer's involvement in the case "would improperly allow him to influence the fact-finder" are merely speculative at this stage. Pl's Reply at 4; *see Kong v. Lindenbaum*, No. 24-CV-4808, 2025 WL 1808757, at *4 (E.D.N.Y. July 1, 2025) (reaching a similar conclusion where "plaintiff has not offered any reason for the Court to find that a tribunal would be misled").

Accordingly, Plaintiffs motion to disqualify Defendants' counsel under Rule 3.7 must be denied at this stage in the proceedings, without prejudice to renewal if it becomes apparent that Mr. Stumer's testimony will be both necessary at trial and is prejudicial to Defendants.

### C. Disqualification Based on Conflict of Interest

Plaintiffs also argue that Mr. Stumer should be disqualified under Rule 1.7 of the Professional Rules of Conduct, as they claim Mr. Stumer's representation of Defendants poses an irreconcilable and unwaivable conflict of interest. Pl's Mot. at 3.

Rule 1.7 provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:

12

>>(1) the representation will involve the lawyer in representing differing interests; or
>>
>>(2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

22 N.Y.C.R.R. § 1200.0. Accordingly, the Second Circuit has held that it is "prima facie improper for an attorney to simultaneously represent a client and another party with interests directly adverse to that client." *Hempstead Video,* 409 F.3d at 133 (internal quotation marks and citation omitted).

Even where a conflict exists, Rule 1.7(b) provides that a conflicted lawyer may still represent a client if:

>(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
>(2) the representation is not prohibited by law;
>
>(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
>(4) each affected client gives informed consent, confirmed in writing.

22 N.Y.C.R.R. § 1200.0.

Assuming without deciding that Mr. Stumer's representation of Defendants poses a conflict of interest, the Court is not convinced that this conflict is

13

unwaivable. Although Plaintiffs argue that a conflict under Rule 1.7 is unwaivable where "the attorney's personal liability is intertwined with the clients' liability," Pl's Reply at 3, Plaintiffs cite only criminal cases to support this proposition. But the Sixth Amendment concerns underlying those cases are not present in this civil case. *See Craig v. City of New York*, No. 20-CV-2152, 2022 WL 2238451, at *7 (E.D.N.Y. June 22, 2022), *aff'd*, No. 24-1180-CV, 2025 WL 1604359 (2d Cir. June 6, 2025) (rejecting the plaintiffs' reliance on criminal cases to argue that an attorney should be disqualified for a conflict of interest, as the criminal cases focused on "a concern that a defendant could successfully appeal a conviction based on ineffective assistance of counsel."). Further, as required by Rule 1.7(b), Mr. Stumer represents that he will be able to provide competent and diligent representation to Defendants and that Defendants have signed consent forms that waive any conflict. Def's Opp. at 5. Accordingly, the Court deems that any conflict of interest has been waived. Defendants are directed to file their consent forms on the docket by February 10, 2026.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs' motion to disqualify Mr. Stumer is denied without prejudice.

SO ORDERED.

/s/ Clay H. Kaminsky
CLAY H. KAMINSKY
United States Magistrate Judge

Dated:     February 3, 2026
           Brooklyn, New York